Melanie L. Cyganowski
Stanley L. Lane, Jr.
OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
Telephone: (212) 661-9100
Facsimile: (212) 682-6104

*Counsel to the Plan Administrator*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| QUIRKY, INC., | Case No. 15-12596 (mg) |
| | (Substantively Consolidated) |
| Debtor. | |

------------------------------------------------------------X

CLINGMAN & HANGER MANAGEMENT
ASSOCIATES, LLC, SOLELY IN ITS CAPACITY
AS THE PLAN ADMINISTRATOR,

                       Plaintiff,     Adv. Pro. No. [____]

v.

WINK LABS, INC. (FORMERLY KNOWN AS
WINK ACQUISITION CORPORATION) AND
FLEXTRONICS SALES & MARKETING (A-P)
LTD., ON BEHALF OF ITSELF AND
RELATED ENTITIES,

                       Defendants.
------------------------------------------------------------X

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

    Plaintiff, by its undersigned attorneys, for their complaint allege as follows:

4661792.1

## NATURE OF THE CASE

1.     This action is brought by Clingman & Hanger Management Associates, LLC, solely in its capacity as plan administrator (the "Plan Administrator") in the cases of the above-captioned debtors and debtors-in-possession, Quirky, Inc. ("Quirky"), Wink, Inc. (n/k/a Wink Dissolution Corp.) ("Wink") and Undercurrent Acquisition, LLC ("Undercurrent", together with Quirky and Wink, the "Debtors") against Wink Labs, Inc. (formerly known as Wink Acquisition Corporation) ("Wink Labs") and Flextronics Sales & Marketing (A-P) Ltd., on behalf of itself and related entities ("Flex", and together with Wink Labs, the "Defendants"). In this action, Plaintiff seeks to enjoin and remedy the Defendants' improper attempt to obtain payment of $975,000 from a now expired Court-established reserve as reimbursement for either a liability for damages that the Defendants never incurred, or an obligation to pay that the Defendants never assumed, prior to the reserve's expiration. Despite having incurred no liability and having assumed no reimbursable obligation to pay, the $975,000 that Defendants seek to be paid is being claimed improperly by Defendants under that certain Basic Third Party Escrow, dated November 20, 2015 (the "Escrow Agreement"), by and among Wink Labs, Quirky, Wink, and JPMorgan Chase Bank, N.A., as escrow agent (the "Escrow Agent") and that certain Letter Agreement – IP Escrow dated October 23, 2015 (the "Letter Agreement") by and between Quirky and Wink and Flex.

## JURISDICTION, VENUE AND PREDICATES FOR RELIEF

2.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 157, 1334, 2201 and the Amended Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). Venue of this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are 11 U.S.C. § 105(a), 28 U.S.C. § 2201, and Rules 7001 and 7065 of

2

4661792.1

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules").

## PARTIES

3. Plaintiff is the Plan Administrator appointed pursuant to the Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code, as confirmed by this Court on July 15, 2016 (the "Plan").

4. Defendant Wink Labs is a corporation organized under the laws of Delaware.

5. Defendant Flex is a corporation organized under the laws of California.

## BACKGROUND

### A. *General Background*

6. On September 22, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization under Chapter 11 the Bankruptcy Code. This Court entered an Order Directing Joint Administration of these Chapter 11 cases on September 25, 2015 [Docket No. 32]. No trustee or examiner has been appointed in these cases.

7. On October 2, 2015, the United States Trustee ("U.S. Trustee") appointed an Official Committee of Unsecured Creditors for these chapter 11 cases (the "Committee") [Docket No. 63].

8. The factual background relating to the Debtors' commencement of these chapter 11 cases and the facts and circumstances supporting the relief requested herein are set forth in greater detail in the *Declaration of Charles Kwalwasser Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14].

9. On July 15, 2016, this Court entered its order confirming the Plan (the "Confirmation Order") [Docket No. 474]. Pursuant to the Confirmation Order, the Debtors' Plan

3

4661792.1

became effective in accordance with its terms on August 30, 2016 (the "Effective Date"). The Plan Administrator was appointed pursuant to section 5.03 of the Plan with all the powers, authority and responsibilities as set forth in the Liquidation Plan Administrator Agreement (as defined in the Plan), including without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code. The Plan Administrator is authorized to bring this action.

### B.    *The Wink Sale Order, Reserve Fund and Plan Settlement*

10.    On November 6, 2015, the Court entered an *Order Authorizing (I) the Sale of Certain of the Debtors' Assets Related to the Wink Business Free and Clear of All Claims, Liens, Liabilities, Rights, Interests and Encumbrances, (II) The Debtors to Enter Into and Perform Their Obligations Under the Asset Purchase Agreement, (III) The Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Wink Sale Order") [Docket No. 178]. Pursuant to the Wink Sale Order, Flex purchased substantially all of Wink's inventory and intellectual property. Furthermore, in connection with the Wink Sale Order, $1 million was carved out from the purchase price to fund an escrow reserve fund (the "Wink Sale Reserve") with the proceeds thereof being available until November 22, 2016, to indemnify Flex against any potential patent infringement claims that might be asserted in the one year period following the entry of the Wink Sale Order with respect to Wink products or intellectual property purchased by Flex in the Sale. Specifically, the Wink Sale Order provides:

> In connection with the Transactions and pursuant to a confidential letter agreement, dated October 23, 2015, the Debtors and Flex have agreed that a portion of the Purchase Price totaling $1 million shall be held in escrow for one year after the Closing *in order to offset certain potential liabilities or expenses of the Buyer that may be reasonably incurred with respect to the Purchased Assets* (the "Post-Closing Escrow"). For so long as general unsecured creditors retain an interest in the proceeds of the Post-

> Closing Escrow, the Committee (or any estate representative vested with the rights and privileges of the Committee) shall be provided with ten (10) business days' notice of any proposed disbursement from the Post-Closing Escrow, and no disbursements shall be made unless any timely objections raised by the Committee or its successor in interest are resolved or ruled upon by the Bankruptcy Court. The Debtors have authority to retain a third party escrow agent reasonably acceptable to the Buyer and the Committee and to enter into agreements related to the escrow related to the same without further order of this Court. (Emphasis added).

*See* Wink Sale Order, ¶ 31.

11.     The October 23, 2016 Letter Agreement and November 20, 2016 Escrow Agreement were entered into by the parties thereto in furtherance of the above provision in the Wink Sale Order directing the establishment of the Wink Sale Reserve.

12.     The vast majority of the property purchased by Flex pursuant to the Wink Sale Order consisted of Wink's existing inventory of a product called the "Hub," and the intellectual property owned by Wink associated therewith.

13.     In connection with the Wink Sale Order, the Plan also provides that the term "Wink Sale Reserve Fund" means "the portion of the Wink Proceeds reserved in connection with the terms of the Wink Sale until November 20, 2016." *See* Plan, Section 1.01. Further, as set forth in the Plan, the term "Plan Settlement Consideration" means "the following consideration: (a) $1,400,000 in Cash, (b) seventy-five percent (75%) interest in any portion of the Wink Sale Reserve Fund that is eventually released, (c) the Retained Causes of Action, and (d) any Distributions otherwise entitled to be paid to Class 1 after the Maximum Class 1 Distribution Threshold has been attained." *Id.* The remaining 25% portion of the Wink Sale Reserve that is eventually released remains subject to the security interest of Comerica Bank ("Comerica").

4661792.1

### C.   *License Agreement and Escrow Agreement Demands and Objection*

14.   In a letter dated July 15, 2016, SIPCO, LLC and IP Co., LLC, d/b/a Intus[IQ] ("SIPCO"), as owners of the Essential Wireless Mesh ™ ("EWM") Patent Portfolio informed Flex that the "products sold by Wink Inc. incorporate features which fall within the scope of the EWM Patent Portfolio," and that, as such, Flex "may benefit from obtaining a license under the EMW Patent Portfolio."

15.   Upon information and belief, although SIPCO's July 15, 2016 letter did not specifically accuse Flex of patent infringement, or make any claim for damages based on any such infringement which may have occurred prior to the date of SIPCO's letter or might be continuing, Flex, after some analysis of the patents referenced by SIPCO in its letter (the scope and extent of such alleged analysis remaining unclear to Plaintiff) purportedly determined that it might have exposure to patent infringement claims by SIPCO.

16.   As a result of the foregoing, sometime after July 15, 2016, Flex engaged in negotiations with SIPCO regarding a license for the EWM Patent Portfolio. Flex neither informed nor conferred with the Debtors or subsequently with the Plan Administrator and its advisors during the course of such negotiations. It was only in late October 2016 -- after months of apparent discussions between Flex and SIPCO -- that Flex, for the first time, disclosed to the Plan Administrator the very existence of its ongoing license negotiations with SIPCO. Flex, however, advised the Plan Administrator and its counsel (as well as counsel for Comerica) that none of the specifics of the license transaction being contemplated between Flex and SIPCO could be shared with the Plan Administrator or Comerica as Flex had entered into a Non-Disclosure Agreement with SIPCO as part of their ongoing discussions over a potential EMW Patent Portfolio license.

17. In mid-November 2016, Flex agreed with the Plan Administrator, together with Comerica and the Escrow Agent, to extend to December 22, 2016 the deadline by which Flex could assert a claim for payment from the Wink Sale Reserve to the Escrow Agent under the Escrow Agreement.

18. In connection with the parties' agreement to extend to December 22, 2016 the deadline within which Flex could seek payment from the Wink Sale Reserve, Flex represented to the Plan Administrator and to Comerica that it would seek SIPCO's permission to share the specifics of its ongoing license negotiations with the Plan Administrator and with Comerica. Flex, however, failed to abide by that representation. Instead Flex informed the Plan Administrator and counsel for Comerica in early December that it intended to finalize an agreement to pay SIPCO $975,000 to acquire a multi-year EMW Patent Portfolio license and that it further intended to seek indemnification for such amount from the Wink Sale Reserve. Flex's attempt to justify the $975,000 amount to the Plan Administrator and Comerica was premised on: (i) its alleged investigation of prior licensing arrangements by SIPCO; (ii) the likely royalty rate that Flex believed would be awarded by a judge or jury in the event of any infringement claim that might be brought by SIPCO against Flex in the absence of an EMW Patent Portfolio license being acquired by Flex, and (iii) alleged historic and projected sales figures for the Hub product based on a running royalty rate as opposed to a one-time royalty payment.

19. In furtherance of Flex's attempt to convince the Plan Administrator and Comerica that $975,000 was a reasonable license fee and subject to indemnification from the Wink Sale Reserve, Flex's counsel advised the Plan Administrator, its counsel and Comerica's counsel, that Flex anticipated selling the Hub products over the next 4 years at $100 per unit.

However, Flex's counsel failed to disclose that: (a) Flex had already stopped manufacturing the Hub product that it acquired from Wink pursuant to the Wink Sale Order, and had introduced and was now manufacturing and selling a new, far more advanced version of the Hub – denominated as the Hub 2 – which it had introduced in October 2016; (b) the $100 per unit price was, in fact, the *retail* price for which the "new" Hub 2's were being re-sold to the public by retailers (the wholesale price that Wink receives for Hub 2 being only about $80 per unit); and (c) the $100 per unit price quoted by Flex was almost double the *retail* price for the original Hub products (the inventory of which Flex had acquired in connection with the Wink Sale Order) which were being sold by retailers at the time of the Wink sale.

20. Thus, it appears that months *after* receiving SIPCO's July 15, 2016 letter which raised the specter of possible patent infringement liability, Flex deliberately decided to roughly double its potential patent infringement exposure and liability by determining to discontinue manufacture of the original Hub and replace it with a far more advanced and far more expensive product, while at the same time hoping to pass the economic risk and cost of such decision on to the Debtors' other creditors.

21. Flex claimed to be entitled to receive $975,000 from the Wink Sale Reserve despite the absence of any evidence that an infringement damages claim by SIPCO or anyone else (for which the Wink Sale Reserve was established in the first place) was ever asserted by Flex before the extended December 22, 2016 indemnification claim deadline.

22. Moreover, on information and belief, the as yet to be entered into EMW Patent Portfolio license that Flex "intends" to enter into with SIPCO would include licenses for patents that the Hub (including the new Hub 2) does not use and for which SIPCO has never asserted any possible patent infringement claim but could possibly be of value to Flex as it

8

develops the next generation of the Hub and/or additional products. Accordingly, Flex has failed to provide any justification for being entitled to that portion of the $975,000 which would be attributable to such superfluous patent licenses from SIPCO in that no "Covered Claim" under the Letter Agreement can be asserted with respect to licenses for technology unrelated to the products and intellectual property rights that Flex purchased from Wink in the Court-approved Wink Sale.

23. Both before and after the Plan Administrator and Comerica agreed with Flex to extend to December 22, 2016 the deadline for Flex to make a claim for payment from the Wink Sale Reserve, the Plan Administrator and Comerica attempted in good faith to resolve this dispute with Flex. Ultimately, however, Flex neither responded to an initial settlement offer from the Plan Administrator, nor engaged in any further communications with the Plan Administrator or Comerica. Instead, on December 21, 2016, Flex sent a demand letter (the "Demand Letter") to the Escrow Agent asserting a claim for payment in the amount of $975,000 from the Wink Sale Reserve. Flex did so despite the fact that Flex is entitled to be repaid from the Wink Sale Reserve *only if* Flex first pays or assumes a binding obligation to pay SIPCO on account of a "Covered Claim under the Letter Agreement." No such Covered Claim exists as it appears that, at least as of the December 22, 2016 expiration date of the Wink Sale Reserve, Flex has neither paid any infringement damage claim asserted by SIPCO nor entered into any license agreement with SIPCO (or otherwise assumed any binding obligation to pay SIPCO).

24. In response to the Demand Letter, on December 27, 2016, the Plan Administrator sent the Escrow Agent an objection to the Demand Letter (a copy of which the Plan Administrator provided simultaneously to Flex).[1]

---

[1] Following the expiration of the Wink Sale Reserve, the Escrow Agent on December 27, 2016, remitted the sum of $22,984.94 from the Wink Sale Reserve to the Plan Administrator. Although the Escrow Agent has yet to account

4661792.1

## COUNT I

## DECLARATORY JUDGMENT

25. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "24" as if fully set forth hereat.

26. Because SIPCO has never asserted a patent infringement damages claim against the Defendants and the Defendants have neither paid any patent infringement damages claim asserted by SIPCO, nor did they assume by December 22, 2016 any binding obligation to pay SIPCO on account of any patent infringement claim or license, Defendants' demand to be paid $975,000 from the Wink Sale Reserve does not, and cannot, constitute a Covered Claim under to the Escrow Agreement and Letter Agreement.

27. Accordingly, the Plaintiff should be granted a declaratory judgment pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001(9).

## COUNT II

## INJUNCTIVE RELIEF

28. Plaintiff repeats and realleges the allegations in paragraphs "1" through "27" as if fully set forth hereat.

29. Injunctive relief pursuant to Bankruptcy Rule 7065, Federal Rule 65 and 11 U.S.C. § 105(a) is necessary and appropriate to enjoin the Defendants from claiming against and recovering the $975,000 they have demanded be paid by the Escrow Agent from the Wink Sale Reserve under the Letter Agreement. Defendants' claim for payment from the Wink Sale

---

to any party, Plaintiff assumes the amount remitted to be the balance of the Wink Sale Reserve held by the Escrow Agent in excess of the $975,000 payment demand made by Flex after the deduction of fees and expenses charged to the Wink Sale Reserve by the Escrow Agent.

4661792.1

Reserve is not a claim "Covered Claim" under to the Escrow Agreement and the Letter Agreement.

30. The allegations in this Complaint constitute meritorious grounds for injunctive relief to enjoin the Defendants from recovering the $975,000 they seek to be paid from the Wink Sale Reserve.

31. The Plaintiff is reasonably likely to succeed on the merits of this action to enjoin the Defendants from being paid the $975,000 they are claiming from the Wink Sale Reserve under the Escrow Agreement and the Letter Agreement.

32. Absent an injunction, the Plaintiff, as the representative and fiduciary of the general unsecured claimholders of the Debtors' estates, will be harmed in that payment of the amount claimed by Defendants will dilute and potentially eliminate any recovery to the general unsecured claimholders and may even affect higher priority creditors.

33. The balance between the harm that the Plaintiff will suffer and the harm that the relief would cause the Defendants favors the Plaintiff. The general unsecured claimholders, on whose behalf the Plan Administrator represents, are at risk of receiving no recovery if the Defendants are able to enforce their claim for payment from the Wink Sale Reserve under the Escrow Agreement and Letter Agreement.

34. The public has an interest in the denial of the Defendants' claim for payment from the Wink Sale Reserve because it will ensure that unsecured claimholders will receive the benefit of the bargain consistent with the Plan and the Bankruptcy Code. Further, it will protect the Escrow Agent from frivolous claims and litigation.

35. The Plaintiff has no adequate remedy at law.

4661792.1

36.    **WHEREFORE**, the Plaintiff respectfully requests that this Court enter judgment in its favor and against the Defendants, and:

A. Enter a judgment declaring that the Defendants' claim for payment from the Wink Sale Reserve is not an allowed claim pursuant to the Escrow Agreement and the Letter Agreement;

B. Enter an order Pursuant to Bankruptcy Rule 7065, Federal Rule 65 and 11 U.S.C. § 105(a) enjoining the Defendants, on a preliminary and permanent basis, from continuing and pursuing their claim for payment from the Wink Sale Reserve; and

C. For such other and further relief as the Court deems just and proper.

New York, New York
Dated: January 19, 2017

        OTTERBOURG, P.C.

        By: _/s/ Melanie L. Cyganowski_
            Melanie L. Cyganowski, Esq.
            Member of the Firm
            230 Park Avenue
            New York, New York 10169
            (212) 661-9100

        *Counsel to the Plan Administrator*

4661792.1